Good morning, Your Honor. It's Juliana Drouse for Petitioner and Appellant Doshman-Johnson. May it please the Court. Your Honor, I'd like to reserve three minutes for rebuttal time, if I may. Thank you. That's fine. The judgment denying the writ should be reversed because it is based on incomplete and false facts. This judgment is error because it is both contrary to established constitutional law regarding the Sixth Amendment right to effective assistance of counsel and that it is based on an unreasonable determination of the facts of the case. And which state court decision is it that we're reviewing under that standard? That's an interesting question. I mean, we did exhaust state remedies by going to the California Supreme Court. They gave a one-word denial. And so what we have here is the Eastern District, the Federal District Court, used the California Supreme Court decision and basically echoed that in its denial of the petition. What do you mean by echoed something that didn't have any reasoning? Do you mean the Intermediate Court? I'm not sure what you mean. By echoed, what I'm saying is that the District Court adopted the reasoning of the Sacramento Superior Court, which is the only written opinion on this case in the state court. Sorry, Superior Court is what I meant. So you mean they echoed that. I think you, too, said Supreme Court. I think you said Supreme Court, so I was confused. Oh, I'm sorry. I'm sorry. So we're reviewing the District Court's decision de novo, right? So I think we can, setting aside what the Eastern District of California may have said, what is the correct state court decision for a federal court to review here? Well, I would first say there is no correct state court decision. What is the right one to be looking at? It would be the California Supreme Court, one word, denial. If that's the case, then we supply reasoning, even if the court did not determine what a reasonable court could have concluded, which is different and perhaps not as helpful to you as if we're reviewing the Superior Court's denial, where it did give an explanation. So don't we review the last reasoned decision, which would be the trial court's decision? Thank you, Your Honor. That's correct. That's concerns me about your position in this case. The phone records would have had potentially demonstrated to a jury that your client was not at the scene of the crime. But your client also had given various alibis, not in court, but had given various alibis that were inconsistent with that explanation. So if the records had been introduced, that evidence could have been impeached with these contradictions. So why isn't it a permissible strategic choice not to go down that road and instead attack the credibility of the only witness to the crime that linked your client to it? The reason is this. What is better alibi evidence than a phone record? Well, it's objective, but it's subject to disbelief on various grounds because of these conflicting stories. You know, that would be a dilemma for the trial counsel to face and something he would have to deal with in closing argument. And he could When he was interviewed by the police officers, he was scared and he made statements. But those would have been admissible as contradictory to the, I think, wouldn't they have been admissible in some other way, even if he had not testified? Well, they would have been, you know, I don't against interest. They might be admissible. But the bottom line is this. The bottom line is this, is that the phone records, the phone, there was absolutely no reason. Trial counsel had everything to gain and nothing to lose by putting on these phone records. Why do you say he has nothing to lose? I mean, he has, right, there's one eyewitness who there are a lot of problems with that eyewitness, right? And he sort of effectively brought out those problems. He puts in this phone evidence. You know, if the jury doesn't believe that it's really his phone, right? Logically, not believing the alibi is not a reason to convict him. But the juries are not always strictly logical. And why isn't it reasonable for him to think, well, gosh, if I put in the stuff that they don't believe, it just hurts my case. The thing about that is that the evidence as to whether or not it was his phone is overwhelming, that it was his phone. Number one, and this goes right to ineffective assistance of counsel. All of the calls were made to Mr. Johnson's brother, mother, girlfriend. Not all of them. There were, I mean, there were some calls that he, I mean, counsel said that there were certain calls made at or near the time of the murder that Mr. Johnson couldn't explain, right? That's right. And there was ineffective assistance of counsel there because trial counsel could have investigated who were those people. And if he hadn't... How do you know he didn't, right? So I read that and I wonder whether counsel wasn't being very careful in the way he phrased that, right? He didn't say, I don't know what the numbers were. He said there were calls that Mr. Johnson couldn't explain, right? So that is one way to read that is, you know, I have no idea what they are. I didn't investigate. The other way to read it is like Mr. Johnson couldn't explain like why he had talked to those people because in fact there were people he didn't know, right? So why do we read it your way rather than the other way? Well, right now this court does not have the complete and accurate facts on which to base a fair decision. That's why we filed a request to file a successive petition and at a minimum an evidentiary hearing is needed to resolve a lot of these questions. This case is in a very unusual posture. There are two appeals pending and the reason for that is this. After the federal court in Sacramento denied our petition, we filed a notice of appeal and this case was on appeal in this court. While this case was on appeal, we received information that the victim's niece went to the Sacramento DA and told the Sacramento DA that Frankie Jones, the only witness who identified Johnson at the trial as the shooter, had said that she had testified falsely. Dale Joe, the Sacramento DA, went and interviewed Frankie Johnson and found out that that's in fact what she's now saying. We used that information to file a renewed petition in the Sacramento Superior Court and we asked this court to stay the appeal while we exhausted state remedies because we had newly discovered evidence. All of that is in the case arising from the other petition. In this case, on the record that we have, under Strickland, isn't it your burden to negate the presumption that counsel had a reasonable strategic basis for making the choice that he did? The court did not found that the hearsay evidence presented in the declarations attached to the petition were incompetent evidence in order to sustain, to grant the petition. Declarations are always hearsay. I'm sorry. In the Superior Court, I didn't think there were declarations. I thought it was just the investigator. And then the declarations came at the level before the California Supreme Court. And I think we probably do look at them under Kennedy, but that's a different, I think you're blurring the two levels together? In the Superior Court, I'm sorry, it looks like my time is about to run out. It's okay, we're going to keep asking you questions, so just keep answering. Okay, because I need to know what the court needs to hear. In the Superior Court, the investigator did not, there was no evidentiary hearing. It was summarily denied on the petition. And it was denied because the court found that hearsay declaration, the declarations were hearsay. But are you talking about the declarations of like the mother and the brother? Because I didn't think those were submitted to the Superior Court. I thought they were submitted after. That's correct. That's correct. But in the Superior Court, we did submit a state that the... The investigator's statement or declaration. Right, the investigator's statement. And that's another interesting fact, because the investigator's statements in their report, all of these people said, this is the phone number that Mr. Johnson was using on the night of the shooting, and we did get calls. Trial counsel, when he was questioned as to, well, you know, first of all, he refused to file a motion for a new trial because he wouldn't get paid. Because appointed counsel in Sacramento Superior Court, they do not get paid to file a new trial motion, so new trial motions are not filed, which I find a little outrageous. Then the court looked at Mr. Johnson's written pro per motion. And trial counsel, this is further ineffective assistance of counsel, argued against his own client, violating one of the most basic tenets of the right to effective assistance of clients, of your client, and that is your duty of loyalty. Can I... You cannot argue. Sorry, I want to ask you a different question, and we have taken you over your time, so while we still have you here, can you explain what happened with this jail alibi conversation with the girlfriend? Is it true that we do not have a transcript or a recording of that? And if so, why? It wasn't presented. And it's nowhere in the record? It's not in the... We have no way to find out what that conversation was? Well, we could find out if it would be in defense counsel's file, which I did get, or in the DA's file, yes. But again... Because it's hard to assess what it would have been to introduce evidence of that when we don't even really know what the conversation was. You know, I don't think it would... Again, I know I'm kind of repeating myself, but what... That alibi was not presented at court, all right? No, it wasn't. But the issue is, had the phone records been introduced, and there would have been an alibi defense, and it would have been fair game to say, well, you gave a completely different alibi that you were at a party in some place that also wasn't where your phone was. That's the relevance of it, which goes both to performance, whether there was a strategic choice that was made or potentially could have been made reasonably, and to the question of prejudice. The prejudice of that would have been overcome by the cell phone evidence. Again... But... The evidence of that... Alibi evidence other than cell phone evidence showing that the caller was 12 miles away. The only better alibi evidence would have been documentation that he was in jail at the time and couldn't have done it, which I have seen, actually, or a video of him being somewhere else. I think the jury would have understood... Except a cell phone isn't a picture of the person, or it can be, I suppose. But I don't understand that to be the case here. In a cell phone, I could hand my cell phone to anybody here in the courtroom, and they can leave with it to a place I've never been. So it isn't quite the same as saying, you know, the person's in jail, or here's a photograph. And that's where I'm having difficulty with this other alibi. I was at a party over here. No, I was over in this other place with my cell phone. You know, that undercuts his credibility rather than focusing on the credibility of the single eyewitness. I think that defense counsel could have easily argued that when he was arrested, he was very confused when he made those statements. And then you have that strong cell phone evidence. And there's absolutely no evidence that anyone other than Mr. Johnson was using the phone. And there's clearly evidence that he was using the phone. You have to look at how this phone was taken. When Mr. Johnson was arrested, he was arrested with another individual. And both of their cell phones were taken. And the DA quickly realized that the cell phone that Mr. Johnson, at the time of his arrest, was not the cell phone that he used on the night of the incident. So he went to Mr. Bonses, the young man who was arrested with my client's cell phone, and went in there and found the phone number for Prince, which is my client's nickname. And that's the cell phone for which they got the search warrant. In the search warrant, the district attorney stated that it belonged to my client. Then, if counsel had done his work, he could have compared the contact list in both phones. The phone that Mr. Johnson was arrested with on the night of his arrest, and the cell phone used on the night of the incident. And I'm sorry, I forgot to take off my mask. Fine, either way. I know. I'm so used to having it on sometimes. I apologize. But he would have found, and he could have presented to the jury, if the DA argued there's no evidence that it's his phone, that the contact lists were identical. Mr. Johnson's contact list was in the phone he was arrested with, and on the phone that he had on the night of the incident. There's absolutely no evidence. Can I ask you, somewhere on 692 of the record, there's a reference to pictures from Johnson's phone that were introduced to show that he was a member of the Crips. Was that the phone that you say he used on the night of the... No, that was from when he was arrested. And that's another... So I didn't actually realize there was this other phone. Is there an explanation why he had two phones? Because he... I'm not that familiar with cell phones and the mechanics of it, but apparently a lot of young people get a phone where they pay a certain amount, and then when that amount runs out, that phone is dead, and then you get another phone. I'd have to have my son come and explain that to you, because I'm too old. I don't know how that works. But that's what happened here. That's what happened in this case. And that's another point. I mean, that was the other thing that the defense counsel, in arguing against his client, which I find outrageous. You only argue against your client if he's committed perjury, and that's not the situation here. He breached his duty of loyalty. But he said he didn't bring it in because this was a gang case, and this would have been prejudicial. All of the gang evidence was already in there. I mean, how would the fact that he had people in there that he associated with, who the law enforcement stated were gang members, wouldn't have been any more prejudicial than what was already there? There was absolutely no reason for this defense attorney not to admit the cell phone. He had everything to gain, and there was nothing to lose. Okay, we've taken you over your time. I will still give you three minutes for rebuttal, but let's hear from the State, and then we'll come back to you. Thank you. Good morning, Your Honors. Could you introduce yourself for the record, please? Of course, I'm sorry.  I do believe that we are reviewing the California Supreme Court ruling, and the Supreme Court of California has said before they don't necessarily at all adopt the reasoning of a lower court, even when they say nothing. And in this case, they actually sought briefing from the Attorney General. And so I don't think we can just assume that we are left with nothing more than what the Superior Court said. And how do you reconcile that position with our decision in Kennedy? Well, in between Kennedy and this court, the California Supreme Court has explained what it does, and the California Supreme Court is the binding authority on what it does. So in Robinson, it explained it doesn't review the lower court ruling. So it's impossible to say that they adopt that ruling when they said we don't review it. If there is evidence you're hearing in the Superior Court, then it will give great weight to the lower court's factual findings. But otherwise, they said they simply make their own decision. And so whatever this court in Kennedy thought the California Supreme Court was doing, they have corrected this court. I understand your description of the California procedure, and I agree with it. But I didn't think that was something new. I think we've known that for a while. I think we knew it in Kennedy. And the Supreme Court cases that tell us about how and when to apply the presumption of looking through to the last reasoned decision also seem to recognize that it doesn't matter whether it's technically an appeal or an original proceeding. So why does that change anything? Well, your belief that you understood it is somewhat contradicted by the fact that the California Supreme Court, when they agreed to answer the question in Robinson, had to correct what this court thought because this court thought that they were reviewing it, and they said we don't. So they had to actually rephrase the question that they answered because they aren't reviewing it. And it is inconsistent with saying they adopted it when they said we don't review it. So suppose for a moment that we don't agree that the principles of California procedure that you've just described are a reason not to apply the look-through presumption. The presumption is rebuttable. If I understood your brief correctly, you have not made any argument that in the circumstances of this case, given the nature of the Superior Court's decision or the fact that new evidence was presented to the Supreme Court, you haven't made an argument that the presumption has been overcome here, have you? Well, I don't know that I've called it overcoming the presumption. I have articulated the reasons that the court had available to it to decide the case. And the case that you point out that notes that it's a rebuttable presumption, Wilson v. Sellers, itself notes, well, if different arguments were briefed to the court or if there are obvious from the record reasons, both those things tend to overcome the presumption. Moreover, that same case points out if indeed the lower court reason was unreasonable, that itself is evidence. So all of that makes a certain amount of sense. My question is, have you forfeited that argument? I didn't think it was in your brief. I don't think it's... No, I don't think we've forfeited the idea that the California Supreme Court relied on certain reasons when we articulate those as the reasons the court relied on, even if we don't specifically say this is because the presumption has been rebutted. Especially when we point out that the presumption itself is rebutted by the California Supreme Court's own statement of what they do. So, no, I... No, I couldn't... Obviously, we are interested in saying we didn't forfeit it, but I don't see how, by not articulating it as overcoming a presumption, we forfeited the arguments we made. The sound quality is pretty echoey and bad. Is there anything we can do about that? That was something we dealt with before, and I don't know why, because I used this system before, but unfortunately, I'm on my phone right now for the audio. I am... I actually have a lot of questions I'd like to ask you. I do, too. I'm really having trouble hearing you, so I don't know if we can... I don't know what we should do, but it's pretty bad. Is there any way to not do the video and somehow get you on a telephone where you just talked up? He is on a telephone. That's the point. I can hang up the video. Do you have the... Is the telephone on speaker? It is. Could you put it next to you and see if that improves it and put it on regular mode and see if that's better? Sure. Is this better? A little bit. Maybe a little bit, so you have it off of speaker now. Yes. I think that is a little bit better. Do you want to go first? Well, I was just going to ask you about sort of the merits of the question concerning the use of the cell phone evidence, and that is this was the only objective evidence, potentially, that was available, so why wouldn't it have been unreasonable for counsel to forego the use of objective evidence that is distinct from someone simply testifying, oh, I wasn't there. It's supported by numerous witnesses and so forth. At the very most, a cell phone would be evidence that a phone is somewhere. It is not objective evidence that the defendant is somewhere because the phone can't say that the person who had the phone is the defendant. Nothing about those records will do that. Someone has to say he had the phone. And several people did. Several people did, and they weren't all criminals. Well, in the transcript of the Marsden hearing, supplemental excerpts of record, I'm starting at page 281, counsel does walk through problems with any number of the witnesses who would try to put the phone in his hand. One, for example, a girlfriend, was recorded making up a false alibi with him. Another girlfriend would emphasize the fact that this was a gang-related case, and again... But that was already known. That was already clearly part of the case, the gang relationship. It is one thing for the prosecutor to present evidence. It's another for the defendant to, by his own witnesses, concede that most of his witnesses who would testify are gang-related. Is that even right as a matter of California evidence law? Because I thought you couldn't introduce gang membership to impeach if there was another relationship to the defendant. And we had a girlfriend, a brother, a mother. They all had other relationships to him. So as I understand California law, they would not have been able to use gang evidence to impeach them. They would have had to just say you're his relative or his girlfriend. I am not... I believe your statement of California law is wrong, Your Honor, that there is nothing that bars that evidence, and particularly in a case where the gang... the relevance of the gang evidence is already before the jury because, for example, it increases the term of the sentence and the juries are making a finding on it. So no, as a general rule, California's truth in evidence law normally would bar a rule excluding that evidence categorically. And moreover, in this case, it was already clearly relevant. But as to the cell phone evidence, I think you're saying that if they had had the mother, brother, and girlfriend testify that he was calling me from this phone that night, those people would have been impeached in part because of gang membership. That certainly can undermine, but the other point I was making is the prosecution's proof of gang-related nature of this shooting actually increases the sentence in this case. So the defense counsel would have an obvious incentive not to bolster the fact that defendant is surrounded by gang persons. But there was really no question that he was a member of a gang, right, at this point? Well, ultimately that was proven beyond reasonable doubt, but defense counsel was not... It would have not been in defense counsel's interest to simply give it up, I suppose. Well, did they ever try to challenge... Did they ever actually contest that he was in the gang as part of the defense? Again, Your Honor, the liability isn't just being a gang member. It is that this was a gang-related shooting, which could be reinforced by the fact that everyone who comes to testify for him, particularly around that time, is a gang member. I had another question, if I might, about the timeline, and that has to do with how certain it is... How certain is the time of the shooting being at 115? I know there was the call that said, my friend or my colleague or whatever has just been shot, but that can be just 15 minutes or whatever. So what other evidence is there of the time of the shooting? Well, that very witness, the very person who made the 911 call and who said, I'm hiding in the store right after the shooting, at trial gave sworn testimony to the contrary. Because at trial he says he ran in and then ran directly out and saw his friend lying there shot. And the prosecutor... Can you just give me a time that you said? Because I'm not sure this is... It was... The phone call came in, I believe, at about 115 a.m. And the officers arrived, I believe, within two minutes. The problem is that phone call wasn't right after the shooting because in between the phone call, as the prosecutor listed at trial, a bunch of cigarettes were smoked that ended up on the floor of the car. And that can't happen in two minutes. The reason I'm asking is that if the shooting... There was time between the first set of mapped phone calls that lasted until 1242 and the second set, which was very close to the shooting at 1252. If the shooting could have happened in those 10 minutes, it doesn't really help him that the phone later is farther away. In other words, if the shooting happened at 1250, it all fits with his presence at the scene as well. I fully agree. Fully. Can you explain how that... So, is there any theory, though, that it happened like half an hour before the call that said it just happened? Well, again, that... Logically, Your Honor, if the person making that 911 call was telling the truth, that should have been the first call. And it wasn't. A non-emergency call came in by someone who obviously hadn't seen it or heard it because they didn't report shots fired. They just reported... I don't know how long it takes to get through on a non-911 call, but they reported there seemed to have been some sort of assault. Looks like it happened maybe within the last 15 minutes. But what they didn't say is shots fired just now. So they are reporting after the shooting. In your view, it's the cigarettes that could demonstrate the passage of time? It is both that and the phone call. How do we know that the first phone call was even about this incident? Well, the form on which that was submitted shows that it was about this incident. They're all tracked on the form. So, yes, this was the... Mario Neal's call, he's the one who made the number one call. It's either the second or third call about this same incident as shown on that form. I'm sorry. What form? What are you talking about? Can you point to the page of the record? Do you mean the 911 logs? Yes. Is that at year 65, I think? I'm trying to jump to it. SCR 22 to 23. It is not in my excerpt. It is in counsel's excerpt, so I'm trying to find that. 65. Sorry, that's on excerpt of record 65. Okay, yeah, that's... Maybe you can walk me through it, but it looks like phone calls that are at 115, so I'm just confused about what you're talking about about this other call and how we would know that it's the same incident. Because it reports the address at 2000 Del Paso Boulevard, the Sunland Liquor Store. And where does it say that this was like half an hour earlier, this call, and that it was about something related? No, no, no. My point, Your Honor, it's about this incident, and the fact that that call comes in before the 911 call, that should have been the very first call, if indeed it was right after the shooting. The fact that it takes time for someone else to get through on a non-911 call, someone who wasn't there at the scene, to become aware of the shooting in the first place and still get in and make a call. And we know they weren't there because common sense would say that if someone witnessed a shooting or even heard it, what they reported was shots fired, not some form of assault. They wouldn't have also had to estimate that it was sometime within the last 15 minutes. I'm sorry, you had some explanation to Judge Graber, I thought, that someone called and said there was an assault 25 minutes before 115. Where does it say that on this form? I'm really confused about where you're getting the idea that something happened so much earlier. We do have the cigarettes because, again, if he ran in right after the shooting, which is what he said, and then came out and made a phone call to the police, and they arrived two minutes later, there would have been no time for someone to smoke a lot of cigarettes that newly ended up on the floor in his car after the shooting. And he says they weren't there before the shooting, so they had to have been there between the shooting and when the officers arrived. So that's one thing. The other is that even though the other phone call is around 115, that wouldn't have been when the shooting was because that person wasn't there to see the shooting. That person had to somehow get to it. Maybe what's motivating the question is I think you may be assuming, speaking only for myself, I think you may be assuming a higher level of familiarity with the jargon used in Sacramento Police Department call logging than I at least have. So can you take us through page 65 and show us what it is that indicates that this was a call about something that happened earlier on a non-emergency line? Okay. It shows that when... Okay. At the very top, line four or five, priority to how received telephone. That is in contrast to on the next page, 66, where it says how received 9-1-1 system. Okay. So it was a 9-1-1 call. It also says that the initial, back to page 65, initial remarks, two county units, a subject has been shot in the side, fire needed, will call. And the initial call type is simply felony assault, less than 15 minutes ago with injuries. As in contrast to on the next page, felony assault in progress. And... Is... So it did not come through the 9-1-1 system. And also it's the prior call, whereas... I'm sorry, let's go with the time. On page 66, Omari O'Neill's call comes in at 1-15-34, and that's a 9-1-1 call. Yet prior to that, on the prior page, we have the non-9-1-1 call at 1-15-25. Right, so that's only nine seconds earlier. Again, but that person is not reporting something that just happened. They're reporting something that they have to estimate the amount of time, something less than 15 minutes ago, and they have to estimate what happened, just in terms of felony assault. It isn't shots fired, which is exactly what... ...someone would have said. That someone just got shot is what common sense would suggest someone would say if they just witnessed someone get shot. And the fact it came through not in the 9-1-1 system suggests also a greater amount of time. It isn't critical, Your Honour, that I persuade you that it happened earlier. It's enough that it isn't clear that it happened at the time of Omari O'Neill's phone call. The one that says felony assault says his friend was just shot. Well, it doesn't say his friend, but a subject hasn't been shot in the side? I don't know. I think it says... Is that what you're referring to? ...near Sun Liquor Store C is hiding inside store saying his friend was just shot.  That's the person who smoked the cigarettes. No, that is Omari O'Neill, and at trial Omari O'Neill testified inconsistently with having made a phone call from inside because he says he ran in and came right back out. So that is inconsistent with this, which is that he's hiding inside the store making a phone call. This is untrue. What he told the 9-1-1 operator is untrue. It did not just happen. He was not hiding in the store with the shots. Rather, this is something that what he did as he testified at trial was something quite different, and that is he ran directly out. So... I guess I just... I thought you were saying that no one would say felony assault without mentioning the shots, and it sounds like there was felonious... Somehow this same felony assault report says about shots. They both mentioned shots, right? The earlier one said somebody was shot in the side. Well, we have... Allow me to leave that point. Can I ask you a different thing? So... Okay. We have these cell phone records. They call his girlfriend, I think maybe a second girlfriend, a brother who's in a different gang, and his mother. How is it plausible that there's a different person who is calling all those people? Like, who would call someone else's mother, someone from a different gang, and the two girlfriends other than the defendant? I don't know for sure that those are the people called. However, again, they... They could come in and say that it was them, but they could be disbelieved. So I don't know that he was necessarily calling those people. But the problem is, there shouldn't have been anyone being called that he doesn't know. I don't know how many people know those people other than the defendant. I simply don't know. But defendant shouldn't be calling anyone he doesn't know. But how in the world would it have come in that there was a couple unexplained phone calls? So the defendant isn't going to get on the stand, and so then you put in the cell phone records and you call a few witnesses who say, I'm the brother, I'm the mother, I'm the girlfriend, he was calling me. At that point, why would anyone... How would you ever get to the situation at trial where you needed to explain the unexplained number? Because the prosecution would have those same records, Your Honor. And who would they ask? Who would they ask the question? How would they show that the defendant did not know that person? By asking those persons who were called, Your Honor. Well, do we know who they are? I mean, you're saying they would call to the stand the number, that person? Well, Your Honor, you're speculating that it wouldn't hurt. And the problem is, if the defendant, even one coming in and saying, I don't know this guy, can torpedo the whole idea that the defendant was calling. Well, I mean, do we have any idea that that could have happened? That the prosecution knew that there were numbers that the person didn't know? I believe the prosecution had all these records, Your Honor. I think the prosecution thought it was his phone because it was Brady evidence, right? That's how they got these records, is the prosecution said these are his phone records? No, but there is nothing to show that they turned this over under Brady. Rather, they would have turned this over under ordinary disclosure rules, which cover far more than Brady. I don't know where Your Honor is getting the idea that the prosecution thought these were exculpatory. There's nothing in the record. Okay, well, whether or not that's true. Well, maybe you know the answer to whether the pictures introduced, so the pictures introduced from his phone were a different phone? I don't know from this record, Your Honor, no. And on the jail conversation about the alibi, is there any reason that couldn't have been introduced regardless of whether the cell phone records were introduced? Like the prosecution could have put on the evidence of the jail conversation anyway, is that right? I believe so. But they chose not to for some reason. Well, it may not have been important. I haven't looked through as to why they didn't, but trial counsel was certainly aware of that as a risk, and that I would imagine would be more likely to come in if you try to put that one of the parties on to testify, that would have been more likely for it to come in. And that's something that counsel had to address. The argument that, well, counsel could have simply addressed all this in argument, perhaps so. But the question is whether every single attorney would have chosen to go with this to its given those problems. Even more, because we are here on habeas, I mean on federal habeas, the question was, could any state court judge think that rationally, some attorney might think it's just not worth the risk. I don't have anything further. So on the phone, is it your theory that he gave the phone to someone else intentionally to create an alibi? I don't have a theory as to what he did with the phone, if he had it. All we can respond to is what they have affirmatively shown, because what we begin with, it was a presumption that counsel was competent and a strong one, not to be brushed aside, just because they can come up with some suggestions of, hey, maybe this happened. They don't prove that he had the phone. Trial counsel is presumed competent, strongly. Trial counsel looked into the defense, even though their claim in the California Supreme Court was that counsel didn't even think of it. And that we should bring counsel in just to find out because we don't really know what counsel was thinking. Well, that's not a basis for claiming someone's incompetent that you simply don't know. You need to have your facts and figures, and they didn't have it, showing that counsel didn't do his job. And we have a Marsden hearing in which counsel says, I did look at it. Counsel apparently thought an expert could put it far away, but counsel who knows about the witnesses and who knows things that this court doesn't, and counsel points out things he has investigated, counsel made a judgment call as to what the best defense would be. And again, the petitioner's argument all along has been that the identification wasn't particularly good. That is reason enough for some counsel to say, that's our best defense then. And while I looked into this- I can't speak for anyone else, but I personally am quite worried that this defendant is not guilty. The one witness has recounted, I know that's not really in this record, but it seems like the one witness has recanted the relative of the victim thinks it's not the right defendant. He's been in jail a long time and the evidence is very thin, and it seems very possible that he had a cell phone with him far from the crime at the time of the crime. Is there any chance that the state would mediate this case if we sent this case to mediation? No. The problem is, Your Honor, we've already had an evidence hearing on that if we're going to go outside the record. And that witness, the recantation has been discredited. She was threatened by the defendant's family in order to recant. That's a specific fact for finding on that. So, no, Your Honor, we don't have any of the same concerns and we see no reason to mediate this case. Thank you. Thank you, counsel. We'll have three minutes for rebuttal. Thank you, Your Honor. Very briefly. First of all, the first thing I want to say is this. Today, a lot has been argued by respondents that were not argued in the brief. And some of it, I don't know where it's coming from. At a minimum, what this argument shows is that this case should be remanded for an evidentiary hearing. So complete and accurate facts can be brought before the court to make a fair decision. Okay, so we have problems with, second and successive petitions have a lot of procedural hurdles. So let's put aside the second or successive petition. In this case, did you ask for an evidentiary hearing? Yes. Did you ask for one? Did you appeal to us saying I should have gotten an evidentiary hearing? Yes. Can you point me to where? Because I guess I didn't focus on that. It's in the title of one of the, I don't have my brief in front of me. I don't know why I didn't bring it. But it's in the title of one of the arguments that this argument, this decision made without an evidentiary hearing is error. And I think that's enough to say that we were arguing an evidentiary hearing at a minimum should have been ordered. You know, there's so many facts. But did you give us the standards for when you get an evidentiary hearing and say that we asked for one and it was denied improperly? Anything like that? No. We didn't go that far. I'm sorry. You know, the time of the shooting, it makes no sense that people would wait 10 minutes or whatever. Why not? I mean, people aren't always sensible in these situations. And looking at the map, had this shooting occurred at approximately 1250, the cell phone towers all fit together quite nicely. So the phone could easily have been in his possession if the time of the shooting had been different. And I think that's what the Superior Court, in part, was trying to say, that there was some uncertainty about the time of the shooting and that this was not 100% inconsistent. There is no evidence, actually, that this shooting occurred at any other time other than at 150. The only competent evidence are the 911 dispatch records. And in the 911 dispatch records, it states, quote, assault in progress. Right? So the 911 operator is, we assume, correctly describing what is told, but they don't know whether it's true. I mean, I could call right now and say something that happened last week is happening right now. So it doesn't make it true. The caller said that his friend had just been shot. I know that, but if he was lying and there is some evidence that that is possible, then this isn't an exoneration. You know, all of this goes to, it would go to the burden of proof for reversal if we did show IAC. And what it is is that... Well, not necessarily, because if the defense counsel looked at this map and looked at the timeline and the uncertainties the same way I'm looking at it right now, couldn't counsel say, well, this is problematic for some of the reasons that were given by the superior court? It could say it's problematic, but those problems did not outweigh the weight of this evidence. Well, isn't that a judgment call for the lawyer? Not... There could be no logical, sensible, tactical decision not to enter this evidence. I've been doing criminal defense, and I've done lots of trial work, and, you know, I've seen lots of trials. I can't imagine a lawyer not presenting this evidence. Like I said before, what is stronger evidence of an alibi than a cell phone record putting you 12 miles away from the scene of the shooting? You know, in order to have a petition granted, a petition for rid of habeas corpus granted, a client does not, a defendant does not have to prove actual innocence. What the standard is is whether there was a reasonable doubt, a reasonable possibility that the result of the trial would have been different had the evidence been presented. And I think that there's more than enough evidence here to meet that standard. And at a minimum, as I stated, I mean, you had so many questions about the evidence, and the evidence is so confusing. And one of the reasons why the evidence is confusing is because when trial counsel argued against his client at this hearing, he presented false evidence, stating that there was no evidence as to who owned the cell phone. He had records from his own investigator putting where people said that this was the phone. And as to credibility of the mother and the brother at testifying, the fact of the matter is all they would have to do would show that it was their phone number in these phone records. And as to the unknown phone calls, what could be presented is, we know who those unknown callers are at this point, because if you look at the phone taken from Mr. Doshman when he was arrested, those unknown phone numbers are on the contact list of that phone that he clearly had when he was arrested and was taken away from him. This thing about the other phone, I don't really remember it being in the briefs, but is it in the record, this other phone, and who these people are? Not, no. And if we had an evidentiary hearing, I mean, all of this, all of this should come out. In order to have a fair decision, we need... Well, can I ask, what would be... I mean, setting aside the question of whether an evidentiary hearing was requested or whether the lack of one was raised on appeal, what would be the basis for an evidentiary hearing under 2254E? The confusion of the evidence that... Well, first of all, first of all, the petition was denied on the premise, on the statement that there was only hearsay evidence presented in the declarations. Well, we can take care of it being hearsay by having an evidentiary hearing and having these witnesses testified and cross-examine. Right, but to get an evidentiary hearing if you haven't developed all the facts in state court, don't you need to show that the facts couldn't have been discovered earlier in the exercise of due diligence and meet the other statutory requirements? Well, first of all, when we filed the petition for writ of habeas corpus in the state court in the first time, we were not given an evidentiary hearing. We were only given an evidentiary hearing after we received the new information regarding Frankie Jones. And at that point, the Superior Court had to grant us an evidentiary hearing. And at that evidentiary hearing, these people did testify, the mother, the brother, the girlfriend. They all testified, and they were subject to cross-examination. And that's the evidence that... why I filed a request to file a successive petition. In order to get that... to cure what was called the hearsay problem, it's no longer hearsay. We have it in a... So can I ask you, this is way outside the record and not really something that would be properly considered, but I just am curious if you can represent to the court that these new numbers that you now say you know who the people are, would they say they knew the defendant? Yes. And they're in his... they are in the same numbers, these unknown numbers, around the time of the shooting, all right? If you look at the phone, that Mr. Johnson had in his possession when he was arrested, they're in that context. So do we have any idea why the lawyer said that Johnson couldn't explain those numbers then? Because, you know, I couldn't tell you... If I saw my daughter's number, without it being her number, I couldn't tell you it was her number because it's on speed dial. Everybody does speed dial now. You know, there are lots of numbers that people just don't know. I mean, that, you know, you just press the button and the call goes through. That's why he said that. But, you know, the... We put the... If you look at Exhibit N on page 11, you know, this came from D.A. Discovery, actually. The phone list. You know, we have... But that was submitted with the second petition where we asked for, you know, after we had the evidentiary hearing in the state superior court. This case is in a very, very unusual posture and things need to be straightened out so that a fair, just decision can be made. The purpose... Okay, I need to interrupt you because we've taken you over your time and let my colleagues have other questions. I think we need to go to the next case. Okay.  Thank you. Thank you, both sides, for the helpful arguments. This case is submitted. Our next case...
judges: GRABER, FRIEDLAND, and MILLER